■ GEORGE DOANE et al., Doing Business as DOANE'S NURSING HOME, Petitioners, v. HOLLIS S. INGRAHAM, as Commissioner of Health of the State of New York, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to review a determination of the respondent State Commissioner of Social Services, dated December 20, 1972, which, with respect to petitioners' nursing home in the Village of Goshen and after a hearing, refused to grant petitioners "a waiver of the relevant provisions of the Life Safety Code of the National Fire Protection Association (21st Ed., 1967)" and to certify petitioners "as a provider of skilled nursing home care" under the State "Medicaid" program established under title XIX of the Federal Social Security Act (U. S. Code, tit. 42, § 1396a *et seq.*). Determination confirmed, without costs (*Matter of Miramichi Nursing Home v. Lavine*, 42 A D 2d 570). The stay granted in the order to show cause of the Special Term, Westchester County, dated January 8, 1973, instituting this proceeding, which stay is deemed a stay of all action by respondents in furtherance of the determination under review, shall be deemed in effect and continued until four months after entry of the order to be made hereon, and for a further period, conditionally, as follows: 1. If, prior to the expiration of the four-month continuation of the stay, petitioners shall (a) complete the "Specified Corrections" hereinafter set forth and (b) submit to the respondent State Commissioner of Social Services a written application for a waiver and a continued certification as providers of skilled nursing home care, based upon proof of completion of the "Specified Corrections", the stay shall be further continued pending determination by said commissioner of said application, which application we direct shall be granted by him upon ascertainment that the "Specified Corrections" have in fact been made. 2. The Specified Corrections are as follows: (a) Install an automatic sprinkler system throughout the facility in accordance with section 10-234 of the Life Safety Code (21st ed., 1967); and (b) As specified by hearing witness James P. Regan, install a barrier at the rear stairwell to stop the rise of heat and smoke from the first floor to the second and, "in the two rooms on the second floor", install doors instead of windows for access to the fire escape. Petitioners are the operators of one of the "Maxwell" nursing homes (*Maxwell v. Wyman*, 458 F. 2d 1146) which were originally decertified by the State Department of Social Services at the end of 1971 for failure to comply with the requirements of the Life Safety Code of the National Fire Protection Association as required by title XIX of the Social Security Act (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subcl. [i]; Code of Fed. Reg., tit. 45, § 249.33, subd. [a], par. [1], cl. [vii]). (See *Matter of Maxwell v. Lavine*, 41 A D 2d 346.) By Federal court action, however, these decertifications were stayed pending hearings concerning whether a waiver of the applicable sections of the Life Safety Code should be granted (*Maxwell v. Wyman*, *supra*). Waiver is allowed where unreasonable hardship is shown and the waiver will not adversely affect the health and safety of the patients (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subcl. [i]). We are of the opinion that there was substantial evidence that petitioners were violating

sections 10–1322 and 10–2341 of the Life Safety Code in that their building was not of at least two-hour fire-resistive construction and did not have an automatic sprinkler system. Further, petitioners' fire protection expert, James P. Regan, in asserting that a sprinkler system provides the equivalent of section 10–1322's two-hour fire-resistive construction, stated that to bring the facility into essential compliance with the subject Life Safety Code: "It would need the installation of an automatic sprinkler system, it would need a barrier at the rear stairwell to stop the rise of heat and smoke from the first floor to the second, it would need the installation of doors in the two rooms on the second floor instead of windows for access to the fire escape." Under these circumstances, a waiver was needed (see *Kruger* v. *Ingraham*, 42 A D 2d 984) and, on the evidence presented at the hearing, the Commissioner of Social Services properly concluded that (as the facility is presently constituted) petitioners had failed to establish that a waiver would not adversely affect the health and safety of the patients (*Matter of Miramichi Nursing Home* v. *Lavine*, 42 A D 2d 570, *supra*). However, we note that the facility has been a nursing home since 1952. It is protected by an automatic heat detection system with a coded alarm to the local Fire Department, to alert the latter that an emergency is emanating from this nursing home. The Goshen Fire Department is all-professional. Petitioners adduced considerable evidence of other fire protection systems and devices and, as noted, Mr. Regan testified that installation of an automatic sprinkler system and the making of certain (minor) corrections would bring the facility into essential compliance with the Life Safety Code. It was stipulated that the facility's current State Department of Health operating certificate states that the home is in substantial compliance with standards. Further, the State Hospital Code, which took effect in 1966, does not mandate an automatic sprinkler system. Subdivision (1) of section 711.5 thereof states that "Each existing nursing home shall have a satisfactory sprinkling and/or a fire detecting system with an alarm connection installed in a manner acceptable to the department" (10 NYCRR 711.5 [1]). The State Hospital Code permits modifications of or exceptions to specifications imposed on pre-existing homes, where conformance would be impractical and modification would not adversely affect the patients. Petitioners' counsel noted that petitioners had asked for "modifications and exceptions", but the last occasion on which petitioners received any response was June 21, 1971, at which time the Regional Health Director advised them to do no corrective work until there was some kind of result on the "modification and exception" request. Petitioners have yet to receive a decision on the request. However, they indicated at the hearing that if there were any corrective work to be done they were ready to do it providing they received some definitive instruction. It is thus clear that although the determination under review must be confirmed, the facility as presently constituted does meet the requirements of the State Health Department with respect to non-Medicaid patients. Under all the circumstances, in the interests of justice, we are granting a limited continuation of the stay in order to afford petitioners an opportunity to promptly make the Life Safety Code corrections which can reasonably be made, i.e., the above-mentioned "Specified Corrections"— which, if originally expressly and clearly required by respondents of petitioners, might have obviated the hearing which was held and these legal proceedings. Rabin, P. J., Hopkins, Munder, Latham and Shapiro, JJ., concur.